## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIAL TECHNOLOGY RESEARCH INSTITUTE,<br><br>Plaintiff,<br><br>LG ELECTRONICS, INC., AND LG ELECTRONICS U.S.A., INC.<br><br>Defendants. | Civil Action No. 2:12-CV-00949<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO SERVE AMENDED INFRINGEMENT CONTENTIONS**<br><br>**HEARING DATE: August 5, 2013**<br><br>*Document Electronically Filed* |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
## LEAVE TO SERVE AMENDED INFRINGEMENT CONTENTIONS

GIBBONS P.C.
Vincent E. McGeary (vmcgeary@gibbonslaw.com)
One Gateway Center
Newark, NJ 07102-5310
Telephone:  973-596-4500
Facsimile:   973-596-0545

SHORE CHAN BRAGALONE DEPUMPO LLP
Michael W. Shore (mshore@shorechan.com)
Alfonso G. Chan (achan@shorechan.com)
Eve L. Henson (ehenson@shorechan.com)
Christopher L. Evans (cevans@shorechan.com)
Andrew Howard (ahoward@shorechan.com)
Wei Wei (wwei@shorechan.com)
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone:  214-593-9110
Facsimile:   214-593-9111

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION...........................................................................................1

II.  RELEVANT TECHNICAL SUMMARY .......................................................3

III. FACTUAL BACKGROUND........................................................................4

    A.   LG attempts to require ITRI to waive its infringement claims ...............4

    B.   LG states its intent is to avoid "piecemeal" amendments and
    ITRI makes clear that it will amend again in light of LG's late
    production...........................................................................................8

    C.   LG contends "part specifications" "describe in detail the
    operation, composition and structure" of the accused products..............9

    D.   After four months, LG begins to wind up its trickling production.......12

    E.   ITRI's Amended Preliminary Infringement Contentions ......................14

IV.  ARGUMENTS AND AUTHORITY ........................................................ 15

    A.   LG withheld production of technical documents until
    June 20, 2013 while ITRI pressed for discovery ....................................16

    B.   If ITRI is unable to amend its infringement contentions, ITRI
    will be required to file a separate suit or be judicially foreclosed
    from obtaining full compensation for its patent rights ...........................19

    C.   LG is not prejudiced by the proposed amendment.................................20

    D.   The *Markman* hearing is not until October, and there is no
    need for delay.........................................................................................21

V.   CONCLUSION..........................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Computer Accelerations Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819 (E.D. Tex. 2007) .........22

*Coopervision, Inc. v. Ciba Vision Corp.*, 480 F. Supp. 2d 884 (E.D. Tex. 2007) ........................21

*Gen. Atomics v. Axis-Shield ASA*, 2006 WL 2329464 (N.D. Cal. Aug. 9, 2006) ..........................15

*Health Grades, Inc. v. MDX Med., Inc.*, 2013 WL 149760 (D. Colo. Jan. 14, 2013) ...................18

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 09-cv-319, 2010 WL 1839321  (D.
    Minn. May 5, 2010) .........................................................................................................21

*Int'l Dev., LLC v. Simon Nicholas Richmond & Adventive Ideas, LLC*, 2010 WL 3946714
    (D.N.J. Oct. 4, 2010)..................................................................................................15, 22

*Lambda Optical Solutions, LLC v. Alcatel-Lucent USA, Inc.*, No. 10-cv-487, 2013 WL 1776104
    (D. Del. Apr. 17, 2013) ....................................................................................................19

*Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. C11-5341, 2013 WL 2403644 (N.D. Cal.
    May 31, 2013).................................................................................................................17

*Mediostream*, 2010 WL 4118589, at *2 ....................................................................................19

*Mediostream, Inc. v. Microsoft Corp.*, No. 2:08-cv-369, 2010 WL 4118589 (E.D. Tex. Oct. 18,
    2010) ..........................................................................................................................17, 21

*Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-cv-565, 2011 WL 2149925 (E.D. Tex. May 5,
    2011) ....................................................................................................................17, 20, 21

*Nidec Corp. v. LG Innotek Co., Ltd.*, Civ. No. 6:07-cv-108, 2009 WL 3673253 (E.D. Tex. Sept.
    2, 2009) .....................................................................................................................17, 19

*Nidec*, 2009 WL 3673253, at *2 (Sept. 2, 2009) .......................................................................21

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) ...................16

*Performance Pricing, Inc. v. Google, Inc.*, No. 2:07-cv-432, 2009 U.S. Dist. LEXIS 84211 (E.D.
    Tex. Aug. 28, 2009)..........................................................................................................22

*Prism Techs., LLC v. Research in Motion Ltd.*, Civ. No. 8:08-cv-537, 2010 WL 1254940 (D.
    Neb. Mar. 24, 2010)........................................................................................18, 19, 21, 23

*TFH Publ'ns., Inc. v. Doskocil Mfg. Co., Inc.*, 705 F. Supp. 2d 361 (D.N.J. 2010)..........15, 16, 17

*Thermapure, Inc. v. Giertsen Co. of Ill.*, 2012 WL 6196912 (N.D. Ill. Dec. 11, 2012)...............18

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-cv-0541, 2013 WL 1626111 (S.D.
    Cal. Apr. 15, 2013) ....................................................................................................18, 22

# I.     **INTRODUCTION**

The Court is likely familiar with LG's strategy: Delay through all possible means the production of technical documents necessary to chart all infringing products.  Then, after finally being forced to produce the material that technically proves infringement, claim delay is a basis to prevent amendment of Plaintiff's infringement contentions.  Although a common strategy, it should not be condoned or supported by the Court.

On June 20, 2013, LG[1] confirmed it had completed its production of "technical documents." Two business days later, ITRI served its proposed amended infringement contentions. *See* Ex. A.[2]     This was the end of a veritable odyssey upon which LG dragged ITRI through every conceivable delay before producing documents that were long-ago required to be produced by Local Patent Rule 3.2.  The gravamen of a motion for leave to amend infringement contentions is the diligence of the moving party. Over an eight month period, ITRI exerted considerable effort–exchanging 61 separate items of correspondence–in obtaining this fundamentally relevant, material, and overdue discovery necessary to amend its infringement contentions.

---

[1] LG Electronics, Inc. and LG Electronics U.S.A., Inc. are referred to collectively as "LG."

[2] ITRI's proposed Amended Infringement Contentions contain information designated under the protective order by LG and are redacted to exclude that information.

During the parties' negotiations, LG first attempted to force ITRI to waive its ability to amend its infringement contentions in exchange for correcting a typographical error. During that process, LG refused to even tell ITRI specifically what it wanted ITRI to waive. ITRI could not give up the right to amend upon a showing of good cause provided by the Local Patent Rules. ITRI put LG on notice that ITRI would be looking for what LG attempted to hide. LG continued to refuse to provide required discovery until ITRI made clear that it would seek Court intervention.

LG admitted on March 8, 2013 that "part specifications" are the only documents that show the operation of the accused products in "greater detail" and, as a result, are the only way for ITRI to determine infringement. LG admitted that many of the accused products are discontinued, rendering those products unavailable for purchase and reverse engineering. LG slow-played its production of these part specifications to create a delay in ITRI's amendment of its infringement contentions. LG created more delay by claiming it wanted to avoid "piecemeal" amendments, but then refused to confer with ITRI regarding LG's preferred timing of ITRI's amendment. The record demonstrates ITRI's diligence in obtaining the discovery to which it is entitled. Two days after LG finally confirmed it completed its "technical" discovery, ITRI served its proposed amended infringement contentions.

LG will not be prejudiced by ITRI's amended infringement contentions.  LG has been on notice of ITRI's infringement theories from the beginning of the case. Even before serving its initial infringement contentions, ITRI met with LG's engineering representatives on several occasions and answered LG's questions regarding ITRI's infringement theories.  Those theories have not changed, only the number of products at issue.  LG belatedly disclosed these model numbers in discovery, and any claims of prejudice are solely of LG's creation.   Claim construction is not dependent on infringement contentions, but is solely taken from the intrinsic evidence.  Even still, the *Markman* hearing is still three months away. ITRI should be granted leave to amend its infringement contentions.

## II.    RELEVANT TECHNICAL SUMMARY

ITRI has alleged infringement by LG of  U.S. Patent Nos. 7,672,198 (the "'198 patent"), 7,542,384 (the "'384 patent") and 6,324,150 (the "'150 patent") (collectively, the "Asserted Patents").  Each of the Asserted Patents covers part of an optical pickup unit ("OPU") that is used for reading compact discs ("CD"), digital versatile discs ("DVD"), and BluRay discs ("BluRay").  The OPU is the functional mechanism in a DVD/CD/BluRay player that reads the data from the selected medium using a laser beam of an appropriate wavelength (each of CD, DVD, and BluRay requires a different wavelength) and manages focusing and tracking functions of the laser to maintain accurate data retrieval.  In its initial

infringement contentions, ITRI alleged infringement of the Asserted Patents by two LG products that contain OPUs that infringe the Asserted Patents.  A year after its initial Local Patent Rule document production requirements, LG finally completed disclosure of information demonstrating infringement by an additional 45 LG products.

### III.    FACTUAL BACKGROUND

**A.    LG attempts to require ITRI to waive its infringement claims.**

On November 5, 2012—before any *Markman* briefing was due—ITRI became aware of a typographical error in its initial infringement contentions. Howard Dec. Ex. 1. LG's non-infringement contentions, citing a "part specification," notified ITRI that it had "mistakenly flip[ped] the location of the first and second laser beam generators and the third laser beam generator.[3]" *Id.* Given LG's prior knowledge of this issue, ITRI provided notice of its intent to amend its contentions "out of an overabundance of caution." *Id.* ITRI followed up the next day. *Id.* at Ex. 2. LG declined to discuss ITRI's amended preliminary infringement contentions until "after the opening claim construction briefs [were] filed." *Id.* at Ex. 3. ITRI agreed to LG's requested delay. *Id.* at Ex. 4.

On November 15, 2012, LG requested a "redline showing the proposed amendment" and agreed to "get back to [ITRI]." *Id.*   Four days later, ITRI

---

[3] CD/DVD/BluRay each require a different wavelength laser.

provided the requested redline. *Id.* at Ex. 5.  A week and a half later, ITRI sent a reminder. *Id.* at Ex. 6. LG was "still ascertaining" ITRI's request to amend to address its typographical error two weeks later, on December 15, 2012. *Id.* at Ex. 7.  On December 19, 2012, ITRI reminded LG that it was LG "who pointed out this correction," and requested a response "as soon as possible." *Id.* at Ex. 8.

On December 28, 2013—during the winter holidays—LG produced more than 3,000 pages of documents.  *Id.* at Ex. 9.  The importance of this production did not become clear until later.  On January 8, 2013, ITRI continued to press for a response from LG: "LG has delayed its response on this issue for two months (see below). What is LG's position with respect to ITRI's amendment to address the typographical error identified by LG?"  *Id.* at Ex. 10.  The next day, LG disagreed that ITRI's amendment was typographical but contended it was "considering possible ways to resolve this issue and anticipate[d] proposing a solution [the] next week." *Id.* at Ex. 11.  LG, however, requested additional time in light of "the response Markman brief." *Id.*

The next day, ITRI expressed its frustration that "it [had] taken two months for LG to decide that it [could not] agree that ITRI's proposed amendment to its infringement contentions stems from a typographical error." *Id.* at Ex. 12.  ITRI noted the irony in LG's position that "product manuals are not available until produced by LG in discovery, [but] LG ha[d] only recently revised its production

5

of [those] items." *Id.* Knowing the importance of diligence to the Court, ITRI set a deadline of January 14, 2013 to learn LG's position regarding ITRI's proposed amendment. *Id.* On January 14, LG delayed again, requesting another week to "propos[e] a solution" in light of the "Thanksgiving holidays, extended periods out of the office, and the yearend/new year holidays.[4]" *Id.* at Ex. 13. The same day, ITRI wrote back and requested that LG "offer a proposal if [it has] one." *Id.* at Ex. 14.

On January 15, 2013, LG's proposal finally came. In exchange for ITRI's correction of a typographical error, LG demanded that ITRI "shall not seek to amend its infringement contentions based on information known to ITRI or available to the public on or prior to November 19, 2013, or to amend its infringement contentions to accuse additional products that were for sale or otherwise available to the public on or prior to November 19, 2012." *Id.* at Ex. 15. "[LG's] proposal would remove [ITRI's] ability to amend regarding additional products if [LG] published information about an infringing device but didn't disclose it in discovery," and was contrary to the good cause standard in the Local Patent Rules. *Id.* at Ex. 16. This was particularly important in light of LG's intervening production of documents. *Id.* at Ex. 9.

---

[4] These holidays did not prevent LG's December 28, 2012 production.

LG confirmed its attempt to obtain a waiver of infringing products on January 29: "[LG's] proposed #2 does seek an agreement that ITRI not attempt to amend based on information that ITRI already had or could have reasonably known at the time ITRI provided its infringement contentions." *Id.* at Ex. 17. ITRI could not "agree to give up rights provided by the rules." *Id.* at Ex. 18. "The scope of the waiver that LG requests … greatly exceeds the small correction requested by ITRI – which [wasn't] even necessary to put LG on notice of ITRI's infringement contentions." *Id.* Suspecting that LG was trying to hide something from ITRI, ITRI requested that LG "please identify" any information "known to ITRI or available to the public" or "additional products that were for sale or otherwise available to the public." *Id.* Nine days later, LG refused, stating it "is not required to perform ITRI's Rule 11 pre-suit investigation" but that it "continue[d] to investigate and identify documents responsive to ITRI's discovery requests." *Id.* at Ex. 19. ITRI could not "agree to limit the scope of LG's infringement liability, particularly when LG admit[ted] that it 'continues to investigate and identify documents responsive to ITRI's discovery requests.'" *Id.* at Ex. 20. Because "ITRI raised this issue more than three and a half months ago, [it could not] wait any longer" and considered LG opposed to its motion to amend.

**B.      LG states its intent is to avoid "piecemeal" amendments and ITRI makes clear that it will amend again in light of LG's late production.**

Faced with a motion and the risk that its gamesmanship would be exposed, LG backtracked and stated its attempt was "to avoid piecemeal amendments." *Id.* at Ex. 21. LG requested confirmation that ITRI "currently [had] no additional amendments to its infringement contentions it intend[ed] to seek." *Id.* ITRI made clear that "in light of LG's persistent attempts to obtain a waiver by ITRI (and LG's refusal to explain what it is trying to hide), we are re-reviewing LG's entire production to find what LG is attempting to require ITRI to waive." *Id.* at Ex. 22. "**LG is on notice** that we are re-reviewing LG's production upon LG's insistence to see if other products disclosed by LG in discovery should be added to the infringement contentions." *Id.* (emphasis added).  In response on February 21, LG reiterated that "[i]t would be inefficient to do this in a piecemeal manner and respond to outdated contentions" and withdrew their opposition to ITRI's amendment.  *Id.* at Ex. 23.  ITRI made clear that it was not "giving up its right to any further amendments" and filed a stipulation regarding the typographical correction on February 26, 2013. *Id.* at Exs. 24, 25.

**C.     LG contends "part specifications" "describe in detail the operation, composition and structure" of the accused products.**

The same day the stipulation was filed,[5] ITRI questioned LG regarding its discovery deficiencies.  *Id.* at Ex. 26.  "In light of LG's [then] recent insistence upon attempting to limit ITRI's infringement contentions regarding accused products, [ITRI requested] immediate production under ITRI RFPs 1, 2, 3, 5, and 40" regarding 23 additional accused products. *Id.* In response ten days later, LG pointed to two "part specifications" which include "detailed views," "**describe in detail** the operation, composition and structure of the accused" products, and "show the operation, composition and structure of the aspects and elements of the accused optical pickup units **in greater detail**." *Id.* at Ex. 27 (emphasis added). LG promised to "investigate similar technical documents" and to produce additional documents. *Id.* The importance of part specifications cannot be understated; LG's first production of a part specification informed  ITRI's understanding that necessitated its first amendment.  *Id.*  LG produced 2,800 pages of documents on March 15, 2013.  *Id.* at Ex. 28.

Because LG made clear that "part specifications" are the most relevant documents, ITRI offered a compromise on March 22, 2013.  *Id.* at Ex. 29.  ITRI re-

---

[5] Given the parties' close agreement on the "typographical" amendment, ITRI attempted to save judicial resources by resolving that issue before resolving LG's continuing discovery deficiencies.

focused its efforts and re-requested the "part specifications" for each of the products at issue.  *Id.* To avoid duplicative production, ITRI offered to accept LG's stipulation that any of the products at issue utilize OPUs covered by the previously-produced part specifications. *Id.* ITRI requested that "LG inform ITRI of whether LG [would] produce the requested part specifications and/or submit a list of products it contends are covered by the previously-produced two part specifications on or before April 5, 2013."  *Id.* Continuing to disclose additional products, LG produced another 600 pages of documents on March 29, 2013.  *Id.* at Ex. 30.

   Also on March 29, LG "confirm[ed] that it [would] identify which … products correspond to the previously-produced part specifications" by April 5, but remained silent regarding any products not covered by those part specifications. *Id.* at Ex. 31. On April 4, ITRI clarified that LG was requested to: "(1) identify in writing any part numbers that LG contends are covered by the previously-produced part specifications… and (2) also produce any other part specifications." *Id.* at Ex. 32. ITRI noted that LG's March 29 production also for the first time identified seven additional products within the definition of an accused device." *Id.* On April 5 and 8, LG identified only which LG products correspond to the two previously-produced part specifications. *Id.* at Exs. 33, 34.  On April 10, LG produced more documents. *Id.* at Ex. 35.  Also on April 10, ITRI invited LG to "revisit its

position" regarding its refusal to provide any information regarding part specifications for 20 products.[6]  *Id.* at Ex. 36.

LG produced more documents on April 12.  *Id.* at Ex. 37.  LG backtracked from its contention that part specifications show the operation of the accused devices in greater detail, complained that ITRI's requests are "piecemeal", and promised to "continue[ ] to investigate" service manuals and to provide a response by April 22.  *Id.* at Ex. 38.  ITRI responded four days later.  *Id.* at Ex. 39.  ITRI explained that any "piecemeal" request was a result of LG's "piecemeal" disclosures on December 28, March 15, and March 29 – all long after the deadline to produce these documents under the Local patent Rules.  *Id.*  ITRI requested production regarding an additional six products that were first disclosed in LG's March 15 production.  *Id.*

LG continued to promise much, but produce little. On April 22, LG promised to "investigate, locate, and produce OPU technical specifications" and "anticipate[d] **starting** to produce these documents" on Friday, April 26.  *Id.* at Ex. 40 (emphasis added).  Importantly, LG contended that "[a] large percentage of

---

[6] LG attempted to foreclose discovery regarding any products not covered by the previously-produced OPUs by re-writing ITRI's compromise.  This makes no sense; no reasonable litigant would write-off discovery regarding products it already put at issue.  Moreover, ITRI's compromise was clear.  LG later, when faced with the obvious absurdity of its position, retracted its untenable position.

these identified products have been long discontinued" and thus no public information was available. *Id.*

### D.    After four months, LG begins to wind up its trickling production.

In an effort to finally come to an agreement, ITRI initiated a conference call on April 26, 2013.  *Id.* at Ex. 41.  As a result of progress made during that call, the parties reached various agreements.  *Id.*  For example, LG agreed to continue to produce part specifications and agreed to confirm that it had identified all products relating to its previously-produced two part specifications.  *Id.*  LG also produced 600 more pages the same day.  *Id.* at Ex. 42.

A week later, ITRI requested an update.  *Id.* at Ex. 43. Four days after that, LG confirmed it was "still investigating documents" and that it "anticipate[d] producing additional OPU documents [that] week."  *Id.* at Ex. 44.  The same day, ITRI reminded LG that:

> ITRI has stated since at least February 2013 that ITRI intends to amend its infringement contentions. ITRI has also hoped to avoid LG's previous complaints about piecemeal amendments, and had thus intended to propose amended PICs including all of the products at issue. **Does LG agree not to raise these ITRI agreements regarding obtaining this discovery to oppose ITRI's amended PICs on the grounds of delay?"**

*Id.* at Ex. 45 (emphasis added). LG would not agree that any delay as a result of its trickling document production should be irrelevant.  *Id.* at Ex. 46.  ITRI again offered to avoid "a needless burden for the parties as well as the Court" as a result

of LG's piecemeal productions, and pressed LG for a date by which it would complete its production. *Id.* at Ex. 47. LG produced another 80 pages of documents. *Id.* at Ex. 48. LG identified a "target" of June 7 to "be substantially completed" with its production of technical documents. *Id.* at Ex. 49.

On May 15, ITRI again gave LG a choice: "Would LG prefer that: (1) ITRI amend its preliminary infringement contentions next week regarding the products for which LG has produced/confirmed OPU information and then later amend when LG produces the additional requested documents (after receipt of all outstanding part specifications); or (2) that ITRI wait until after LG completes its production so that ITRI can present complete amendments to its contentions." *Id.* at Ex. 50. LG declined "to dictate or advise as to the timing of any effort by ITRI to amend its PICs" and reiterated its target of June 7. *Id.* at Ex. 51. On May 21, 2013, LG produced another 600 pages of documents. *Id.* at Ex. 52.

At the close of business on June 7, ITRI asked LG if it should be expecting the promised production. *Id.* at Ex. 53.  A few hours later, LG produced an additional nine pages.  *Id.* at Ex. 54.  LG issued a "corrective" production on June 10—after its self-imposed deadline—but that production did not include the agreed-to optical character recognition. *Id.* at Exs. 55, 56. On June 18, LG produced another 140 pages.  *Id.* at Ex. 57.  ITRI asked if this was LG's "final production."  *Id.* at Ex. 58.  June 19 brought another corrective LG production.  *Id.*

at Ex. 59. And on June 20, 2013, while "continu[ing] to investigate documents" and "reserv[ing] a right to supplement," LG confirmed it had "produced all of the OPU part specifications for those identified products." *Id.* at Ex. 60.

ITRI served its amended infringement contentions two business days later. *Id.* at Ex. 61. The parties conferred on July 1, 2013, but could not reach an agreement. LG could not articulate a single set of circumstances upon which it could agree to ITRI's proposed amendment.

**E.    ITRI's Amended Preliminary Infringement Contentions.**

ITRI's amended preliminary infringement contentions utilize the same infringement theory as in its initial infringement contentions. During the course of discovery, LG disclosed an additional 45 infringing products. Forty-one products infringe the '150 patent, and are grouped into five groups with the identical optical pickup unit. *See* Ex. A. Six products infringe the '198 and '384 patents and all contain the same optical pickup unit. *Id.* ITRI's infringement theories have not changed, but LG's infringement exposure is augmented as a result of products— the majority of which were discontinued—that LG hid from discovery until now. The *Markman* hearing is not scheduled until October 10, 2013. [Dkt. No. 205].

## IV.   ARGUMENTS AND AUTHORITY

Local Patent Rule 3.7 provides that leave to amend infringement contentions may be granted "by order of the Court upon a timely application and showing of good cause." *See also Int'l Dev., LLC v. Simon Nicholas Richmond & Adventive Ideas, LLC*, 2010 WL 3946714, at *3 (D.N.J. Oct. 4, 2010). Relevant factors in determining good cause include:

> (1) the reason for the delay and whether the party has been diligent;
>
> (2)  the importance of what the court is excluding and the availability of lesser sanctions;
>
> (3) the danger of unfair prejudice; [and]
>
> (4) the availability of a continuance and the potential impact of a delay on the judicial proceedings.

*Id.* "Rule 3.7 is not a straitjacket into which litigants are locked from the moment their contentions are served, but instead, a modest degree of flexibility [exists.]" *Id.* (internal citations omitted); *TFH Publ'ns., Inc. v. Doskocil Mfg. Co., Inc.*, 705 F. Supp. 2d 361, 366 (D.N.J. 2010). "[W]hile the Local Patent Rules strive to have a party establish their contentions early on, it is important to recognize that 'preliminary infringement contentions are still preliminary.'" *Id.* (quoting *Gen. Atomics v. Axis-Shield ASA*, 2006 WL 2329464, at *2 (N.D. Cal. Aug. 9, 2006)); *TFH Publ'ns.*, 705 F. Supp. 2d at 366.  Good cause may include an unexpected claim construction, recent discovery of material despite an earlier diligent search,

and recent discovery of nonpublic information.  *TFH Publ'ns.*, F. Supp. 2d at 365-
66.  Courts evaluating whether good cause exists focus on whether the moving
party acted diligently when new evidence is related to the moving party in
discovery.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355,
1363 (Fed. Cir. 2006).

**A.  LG withheld production of technical documents until June 20, 2013
while ITRI pressed for discovery.**

ITRI spent many months attempting to obtain overdue discovery from LG
regarding infringing products.  From LG's first attempt to force ITRI to waive its
rights to make future amendments, ITRI made clear its intent to obtain discovery
necessary to amend its infringement contentions to include documents hidden in
discovery during LG's holiday production.  Once ITRI's intention was made clear,
LG slow-played its trickling disclosure of additional products for as long as
possible to create a straw man of delay that is disproven by demonstrable facts.
*See* Exs. 1-61. "Part specifications" are the key documents in the relevant
infringement analysis, a fact laid bare by LG's initial non-infringement contentions
and confirmed by LG when it stated part specifications show the operation of the
accused devices in "greater detail." This is particularly the case when products are
discontinued and unavailable for reverse engineering and technical analysis.
Nevertheless, ITRI offered to amend its infringement contentions as LG produced
documents, but LG refused to offer a preference.  After months and months of

16

stalling on discovery, LG confirmed its "technical" production was complete on June 20, 2013. ITRI served its amended preliminary infringement contentions two business days later.

When an infringement defendant's dilatory discovery practices create delay, courts unhesitatingly find good cause to permit amendment of infringement contentions:

- *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-cv-565, 2011 WL 2149925, at * 2 (E.D. Tex. May 5, 2011)[7] ("Because [defendant] produced material information at the last minute, the Court will allow [plaintiff] to amend its infringement contentions at the last minute.")

- *Mediostream, Inc. v. Microsoft Corp.*, No. 2:08-cv-369, 2010 WL 4118589, at *3 (E.D. Tex. Oct. 18, 2010) (where defendant continued to produce documents over five month period, "this factor weighs in favor of granting [plaintiff] leave to amend its infringement contentions.").

- *Nidec Corp. v. LG Innotek Co., Ltd.*, Civ. No. 6:07-cv-108, 2009 WL 3673253, at *1 (E.D. Tex. Sept. 2, 2009) (defendant's production of information disclosing infringement by 35 additional models more than a year after initial infringement contentions were due creates good cause).

- *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. C11-5341, 2013 WL 2403644, at *7 (N.D. Cal. May 31, 2013) (when defendant produced information in June 2012 that was added to infringement contentions in March of 2013, delay "is not unreasonable.")

---

[7] "The Court notes that both the District of New Jersey and the Eastern District of Texas have adopted verbatim their Local Patent Rules from the Northern District of California. The Court recognizes that the issues raised in the instant Motion have not been analyzed in this District and, therefore, finds it appropriate to look to cases from those districts for guidance." *TFH Publ'ns.*, 705 F. Supp. 2d at 365 n.3.

- *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-cv-0541, 2013 WL 1626111, at *4 (S.D. Cal. Apr. 15, 2013) (Plaintiff first learned about the new product in July of 2011 and "[s]oon after receiving the information through discovery… Plaintiffs filed the amended infringement contention adding the new product.").

- *Prism Techs., LLC v. Research in Motion Ltd.*, Civ. No. 8:08-cv-537, 2010 WL 1254940, at * 3 (D. Neb. Mar. 24, 2010) (permitting amended infringement contentions based upon finding that "[t]he record reflects that the majority of the 600,000 plus pages of documents that [defendant] provided to [plaintiff] were disclosed on a rolling basis after the August 21, 2010, deadline for amending infringement contentions without leave of the Court.")

- *See Thermapure, Inc. v. Giertsen Co. of Ill.*, 2012 WL 6196912, at *3 (N.D. Ill. Dec. 11, 2012) ("After learning about [the defendant's] heater use in November 2012, [the plaintiff] timely filed a motion seeking leave to amend its final infringement contentions with this new information. The court concludes that [the plaintiff] acted with the requisite diligence to satisfy Local Patent Rule 3.4's good cause requirement.")

- *Health Grades, Inc. v. MDX Med., Inc.*, 2013 WL 149760, at *1 (D. Colo. Jan. 14, 2013) ("Good cause may include . . . recent discovery of material despite an earlier diligent search, and recent discovery of nonpublic information.").

ITRI was forthright about its intent to amend its infringement contentions.  LG knew it was required to complete its "technical production," but refused to do so for as long as possible to attempt to procedurally avoid liability for its infringement of more than 45 products.[8]  As soon as LG completed its production on June 20, ITRI served its amended infringement contentions.  ITRI is entitled "to rely on the

---

[8] LG still reserves the right to produce additional documents, so still may be withholding material information demonstrating its infringement.

information disclosed to [it] during discovery to hone [its] theories of the case."
*Prism* Techs, 2010 WL 1254940, at *3 n.2.  The only delay in this case is LG's
persistent refusal to participate in good-faith discovery.  That tactic should not be
laid at ITRI's feet.  ITRI's motion for leave to amend should be granted.

**B.**     **If ITRI is unable to amend its infringement contentions, ITRI will be
required to file a separate suit or be judicially foreclosed from obtaining
full compensation for its patent rights.**

Whether ITRI is permitted to amend its infringement contentions is a high-
stakes issue.  LG's counsel spent months and months (and thousands of dollars)
resisting and slow-playing discovery because there is a significant procedural
benefit to avoiding amendment of infringement contentions.  In its share of the tug-
of-war, ITRI spent the same amount of time and legal fees obtaining long-overdue
discovery.  When a plaintiff is "seeking to add a significant number of products to
its Infringement Contentions" and leave is denied "it would be unable to accuse
these products in this litigation." *Nidec Corp.*, 2009 WL 3673253, at *2.  This is a
"dispositive" issue, which "weighs in favor of granting leave to amend."
*Mediostream,* 2010 WL 4118589, at *2.  Denial of leave to amend would render
ITRI "unable to pursue its infringement theories."[9]  *Id.* at *3; *see also Lambda
Optical Solutions, LLC v. Alcatel-Lucent USA, Inc.*, No. 10-cv-487, 2013 WL
1776104, at *1 n.1 (D. Del. Apr. 17, 2013) (Defendant's request "which seeks to

---

[9] If ITRI's motion for leave is denied, it will file another lawsuit asserting
infringement of these late-disclosed products.

19

prevent [plaintiff] from asserting additional patent claims in this litigation" is a "case-dispositive issue."). LG's tactic is simple: Hide infringing products for as long as possible and then attempt to prevent their inclusion in the case. The Court's response should be just as simple: Procedural tactics and delay are not a substitute for determination on the merits.

**C.     LG is not prejudiced by the proposed amendment.**

It is difficult to countenance LG's responsive argument regarding prejudice. LG has been on notice of ITRI's infringement contentions since ITRI met with LG's engineering representatives at the outset of this case and answered LG's questions regarding ITRI's infringement. LG has not challenged the adequacy of ITRI's initial infringement contentions. ITRI's amended preliminary infringement contentions accuse products with the same OPU or products that have identical OPUs for purposes of infringement analysis as those in ITRI's initial infringement contentions. The only reason those parts are added now is LG's delay in producing documents until June 20, 2013. Courts are unsympathetic to claims of prejudice created by a party's own delay. *Mondis Tech.*, 2011 WL 2149925, at *3 ("Perhaps most important to this Court is that to the extent [defendant] is prejudiced at all by this late amendment, this prejudice was caused by [defendant's] failure to perform its discovery obligations in a reasonable manner."); *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 09-cv-319, 2010 WL 1839321, at *3 (D. Minn. May 5,

20

2010) ("A party that fails to disclose information in a timely manner has little room to complain that the opposing party is tardy.'") (quoting *Coopervision, Inc. v. Ciba Vision Corp.*, 480 F. Supp. 2d 884 (E.D. Tex. 2007)); *Mediostream*, 2010 WL 4118589, at *4 ("Any prejudice suffered by [defendant] is overstated because the amendments result from [defendant's] own production of documents necessary to make specific infringement contentions."). If LG claims prejudice, it only has itself to blame. For this reason, too, ITRI's motion for leave should be granted.

**D.    The *Markman* hearing is not until October, and there is no need for delay.**

ITRI's infringement contentions are irrelevant to claim construction; the scope of a patent is determined by the intrinsic evidence. *Mondis Tech.*, 2011 WL 2149925, at * 3 ("Although the Court understands practically how parties often determine their claim construction positions, claim construction is intended to be decided based on the intrinsic evidence and to a lesser extent the extrinsic evidence [-] **neither of which depend on the infringement positions or infringing products**. In accordance, [plaintiff's] infringement theory should have no effect on claim construction.") (emphasis added). Irrespective of this fact, "[t]he *Markman* hearing in this case is scheduled in October…. The parties will have ample time to adjust their strategies and prepare for these deadlines." *Nidec*, 2009 WL 3673253, at *2 (Sept. 2, 2009); *see also Prism Tech*, 2010 WL 1254940, at *4 ("Prejudice to the non-moving party 'is significantly lessened when amendment

21

occurs prior to the [claim construction] hearing.'" (citing *Performance Pricing, Inc. v. Google, Inc.*, No. 2:07-cv-432, 2009 U.S. Dist. LEXIS 84211, at *7 (E.D. Tex. Aug. 28, 2009)); *Int'l Dev.*, 2010 WL 3946714, at *3 (D.N.J. Oct. 4, 2010) ("Although *Markman* briefs have been submitted, no hearing has been scheduled and, therefore, the parties' *Markman* briefs may still be revised."); *Zest IP*, 2013 WL 1626111, at *4 (ignoring defendant's argument that infringement theories would be adjusted and noting the "parties may address these considerations during the pretrial conference."). If LG's gamesmanship extends to its claim construction, and that gamesmanship is defeated by ITRI's amendment, it is not only legally impermissible but LG's own fault. ITRI should be granted leave to prosecute its claims regarding the full scope of LG's infringement.

## V.   CONCLUSION

The Local Patent Rules "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases.'" *Int'l Dev., LLC*, 2010 WL 3946714, at *3 (quoting *Computer Accelerations Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007)). LG denigrated this purpose by dragging discovery on for eight months, missing formal deadlines and self-imposed promises. There exists no "rule requiring a litigant to scour the universe of publicly available information to find discoverable information," and the Local Patent Rules provide an affirmative duty

22

to the contrary. *Prism Techs., LLC v. Research in Motion, LTD*, 2010 WL 1254940, at \*3 (D. Neb. Mar. 24, 2010).  LG ignored the purposes, intent, and requirements of the Local Rules and did not complete its production of "technical" documents until June 20, 2013.  As soon as it did, ITRI amended its infringement contentions.   The eight-month battle required to obtain clearly-discoverable information from LG should not be necessary, but was required. The Court should not implicitly sanction such discovery practices by foreclosing ITRI from recovery regarding products late-produced that clearly infringe. But that is exactly what LG asks:  authorize dilatory discovery practices to avoid liability. This is an untenable precedent that this Court should avoid.  ITRI's motion for leave should be granted.

Dated: July 12, 2013                    Respectfully submitted,

By: */s/ Vincent E. McGeary*
GIBBONS P.C.
Vincent E. McGeary
(vmcgeary@gibbonslaw.com)
One Gateway Center
Newark, NJ 07102-5310
Telephone:  973-596-4500
Facsimile:   973-596-0545

SHORE CHAN BRAGALONE
DEPUMPO LLP
Michael W. Shore
(mshore@shorechan.com)
Alfonso G. Chan (achan@shorechan.com)
Eve L. Henson (ehenson@shorechan.com)
Christopher L. Evans
(cevans@shorechan.com)
Andrew Howard
(ahoward@shorechan.com)
Wei Wei (wwei@shorechan.com)
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone:  214-593-9110
Facsimile:   214-593-9111

***Attorneys for Plaintiff***
***Industrial Technology Research Institute***

24

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO SERVE PLAINTIFF'S AMENDED INFRINGEMENT CONTENTIONS** via the Court's CM/ECF system on this 12th day of July 2013.  Additionally, counsel of record will be served with an electronic copy via email.


*/s/ Vincent E. McGeary*____
Vincent E. McGeary



<u>**CERTIFICATE OF CONFERENCE**</u>

The undersigned hereby certifies that, on July 12, 2013, counsel for ITRI conferred with counsel for LG regarding the relief requested herein.  LG opposes ITRI's motion for leave to amend its infringement contentions.

*/s/ Andrew M. Howard*_____
Andrew M. Howard

25