NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDUSTRIAL TECHNOLOGY RESEARCH INSTITUTE, | |
| Plaintiff, | Civil Action No. 12-949 (ES) |
| v. | **OPINION** |
| LG ELECTRONICS INC. & LG ELECTRONICS U.S.A., INC., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

## I.     Introduction

Before the Court is Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.'s (collectively, "Defendants" or "LGE") motion to partially stay this patent infringement action pending *inter partes* reexamination of U.S. Patent No. 7,672,198, one of three patents-in-suit. (D.E. No. 193, Defendants' Motion to Stay the Proceedings as to U.S. Patent No. 7,672,198 ("Def. Mov. Br.")). Plaintiff Industrial Technology Research Institute ("Plaintiff" or "ITRI") opposes this motion. (D.E. No. 195, Plaintiff's Opposition to Defendants' Motion to Stay Regarding U.S. Patent No. 7,672,198 ("Pl. Opp. Br.")). The Court resolves this dispute without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons below, the Court GRANTS Defendants' motion.

1

## II.     Background

In November 2010, ITRI brought this patent infringement action against LGE in the Eastern District of Texas.  (D.E. No. 1).[1]  Then, in February 2012, the Eastern District of Texas transferred the action to this Court in response to a motion by LGE.  (D.E. Nos. 116 & 117).  In April 2012, the parties accordingly exchanged preliminary contentions pursuant to this District's Local Patent Rules.  (Def. Mov. Br. at 4-5 (citing Local Patent Rules 3.1, 3.2A & 3.4A)).[2]

The three patents-in-suit are U.S. Patent Nos.: 6,324,150 (the "'150 patent"); 7,672,198 (the "'198 patent"); and 7,542,384 (the "'384 patent").  (D.E. No. 67, Second Amended Complaint, Counts I-III).  ITRI's infringement claims generally relate to LGE's optical disc drive devices, including products bearing optical pickup heads, such as the "BD590 Blue-Ray Disc Player," the "GP08LU30 Optical Media Super-Multi Rewriter," the "LG Portable Super Multi Drive GP08LU30," and other similar products.  (*Id.* ¶¶ 16, 25, 34 (alleging infringement for the '150, '198, and '384 patents, respectively)).  In opposition, LGE denies infringement and asserts that these three patents are invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112.  (D.E. No. 78 at 12-14).

On September 13, 2012, however, LGE filed a request with the PTO for *inter partes* reexamination of independent claim 3 and dependent claims 4-8 of the '198 patent, asserting invalidity under 35 U.S.C. §§ 102 & 103.  (Def. Mov. Br. at 5-6 (citing D.E. No. 185-6, LGE's Request for *Inter Partes* Reexamination of the '198 Patent) ("LGE's Reexam. Request"); Pl. Opp. Br. at 3).  As issued, independent claim 3—the only independent claim from the '198 patent asserted in this action—is as follows:

---

[1] ITRI also named LG Corporation as a defendant, but the parties later jointly stipulated to LG Corporation's dismissal, with prejudice, from this action.  (D.E. No. 146).

[2] Pursuant to the Local Patent Rules of the Eastern District of Texas, the parties initially exchanged the following preliminary contentions before transfer to this District: (1) ITRI's infringement contentions (in September 2011); and (2) LGE's invalidity contentions (in January 2012).  (Def. Mov. Br. at 4; Pl. Opp. Br. at 2-3).

> 3. An optical pickup head, applicable for moving an objective lens assembly, comprising:
>
> an objective lens carrier, for carrying the objective lens assembly, wherein a vertical direction, a first horizontal direction, and a second horizontal direction that are vertical to each other are defined on the objective lens carrier;
>
> two supporting yokes, arranged along a first horizontal axial direction and spaced apart from each other by the objective lens carrier, such that the objective lens carrier is located between the two supporting yokes;
>
> two magnets, respectively fixed on inner surfaces of the supporting yokes that are facing each other, such that the objective lens carrier is located between the two magnets;
>
> at least a focusing coil, winding around the objective lens carrier, wherein a normal direction of the focusing coil is parallel to the vertical direction;
>
> a plurality of tracking coils, disposed at the objective lens carrier, wherein a normal direction of the tracking coil is vertical to the vertical direction and parallel to a plane formed by the first horizontal direction and the second horizontal direction; and
>
> two yokes, arranged along the second horizontal axial direction and spaced apart from each other by the objective lens carrier, such that the objective lens carrier is located between the two yokes, wherein a protruding part is protruded from an inner surface of each yoke and extends towards the objective lens carrier.

('198 Patent at 6:59-7:20; *see also* Def. Mov. Br. at 1).

Also in September 2012, "the parties heavily negotiated and exchanged respective constructions, including terms for the '198 patent," for the *Markman* stage of the instant action. (Pl. Opp. Br. at 5 (citing D.E. No. 195-1, Henson Decl. ¶¶ 3-5)). At this time, LGE "stated [to ITRI that] it did not plan to seek a stay" regarding the '198 patent. (*Id.* (citing Henson Decl. ¶ 4)).

Thereafter, on October 15, 2012, the PTO granted LGE's request for *inter partes* reexamination. (D.E. No. 185-5, Order Granting LGE's Request for *Inter Partes* Reexamination ("PTO Reexam. Grant"); *see also* Def. Mov. Br. at 5). Concurrently, the PTO rejected claims 3-8 as invalid over prior art that LGE had submitted with its request for reexamination. (PTO Reexam. Grant; *see also* Def. Mov. Br. at 5).

On November 7, 2012, the parties filed their opening *Markman* briefs, and, on January 11, 2013, the parties filed their responsive *Markman* briefs. (D.E. Nos. 170, 171, 183 & 184). In this briefing, the parties dispute the scope of several terms from independent claim 3, including the phrase "a protruding part is protruded from an inner surface of each yoke." (*See, e.g.*, D.E. No. 170, ITRI's Opening *Markman* Brief, at 17-24; D.E. No. 171, LGE's Opening *Markman* Brief, at 17-22).

Notably, however, on January 9, 2013, ITRI responded to the PTO's rejection by, *inter alia*, adding the following language to the end of independent claim 3:

> <u>wherein each protruding part includes a front edge opposite the yoke from which the protruding part protrudes and facing the objective lens carrier, and each protruding part protrudes to a predetermined distance in the second horizontal direction such that a space is provided in the second horizontal direction between the front edge of the protruding part and a nearest one of the plurality of tracking coils on the objective lens carrier.</u>[3]

(D.E. No. 194-2, Ex. 2 to Cangro Decl. at 2-3). ITRI also removed the "axial" term from claim 3 and added a new independent claim 14. (*Id.* at 2, 4-5). Moreover, ITRI argued to the PTO that independent claim 3 and dependent claim 4—which depends on claim 3—are valid over the asserted prior art based on the amended claim language. (*See, e.g.*, *id.* at 7, 10, 11). On February 7, 2013, LGE proposed to the PTO "additional prior art rejections and rejections under 35 U.S.C.

---

[3] The Court underlines the text of this claim amendment because ITRI's response to the PTO so provides. (D.E. No. 194-2, Ex. 2 to Cangro Decl. at 2-3).

§ 112 in response to ITRI's claim amendments." (Def. Mov. Br. at 7 (citing D.E. No. 194-3, Ex. 3 to Cangro Decl. at 6-37)).

Then, on February 8, 2013, LGE sent ITRI a letter asking ITRI to withdraw the '198 patent from this action with prejudice or to explain why continued litigation is warranted given ITRI's amendments in the pending reexamination proceedings. (Def. Mov. Br. at 8 (citing D.E. No. 194-6, Ex. 6 to Cangro Decl. at 2); Pl. Opp. Br. at 6).[4] Although ITRI did not respond to LGE, it later informed the Court and LGE (during a February 13, 2013 conference) that it would not be withdrawing the '198 patent from this action and would oppose a motion to stay. (Def. Mov. Br. at 8). Accordingly, on February 19, 2013, the Court set a briefing schedule concerning LGE's request to partially stay this action. (D.E. No. 191).

On February 20 and March 5, 2013, ITRI submitted Information Disclosure Statements with additional prior art references to the PTO. (Def. Mov. Br. at 7-8 (citing D.E. Nos. 194-4 & 194-5, Exs. 4 & 5 to Cangro Decl.)). Finally, on February 28, 2013, LGE sent another letter to ITRI requesting that ITRI reconsider its opposition to a partial stay, but, on March 4, 2013, ITRI responded and maintained its opposition. (*Id.* at 8 (citing D.E. Nos. 194-7 & 194-8, Exs. 7 & 8 to Cangro Decl.)). A *Markman* hearing is set for October 10, 2013, and the Court will set a trial date shortly thereafter. (D.E. No. 205).

**III. Legal Standard**

"Courts have inherent power to manage their dockets and stay proceedings . . . including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed.

---

[4] LGE's February 8th letter "alternatively proposed requesting that the Court adopt the agreed to construction but postpone construction of disputed terms until the reexamination of the '198 patent is complete." (Def. Mov. Br. at 8).

5

Cir. 2008) ("[W]hen an order granting *inter partes* reexamination issues . . . the defendant may . . . seek a stay under the district court's inherent power.") (italics added).

In deciding whether to stay a matter pending reexamination, courts consider the following three factors (hereinafter, the "*Xerox* factors" or, if referred to individually, "*Xerox* factor"): "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Stryker Trauma S.A. v. Synthes (USA)*, No. 01-3879, 2008 WL 877848, at *1 (D.N.J. Mar. 28, 2008) (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)); *see also ICI Uniqema, Inc. v. Kobo Prods., Inc.*, No. 06-2943, 2009 WL 4034829, at *1 (D.N.J. Nov. 20, 2009) (same).

Courts in this District have observed that granting a reexamination stay is favored and commonplace. *See ICI Uniqema*, 2009 WL 4034829, at *1 ("As such, courts have noted that granting a stay pending reexamination is favored."); *see also Brass Smith, LLC v. RPI Indus., Inc.*, No. 09-6344, 2010 WL 4444717, at *6 (D.N.J. Nov. 1, 2010) ("Although every case is fact specific, almost every reported New Jersey District Court opinion that has considered the issue has granted a stay where a reexamination request was pending.").

Nevertheless, "[c]ourts weigh the costs and benefits associated with granting a stay pending reexamination of a patent." *Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*, No. 12-2278, 2012 WL 3061495, at *2 (D.N.J. July 25, 2012). As such, "[t]here is no conflict between a reexamination and a challenge to a patent in federal court, despite the fact that the two forums may come to differing conclusions on the same patent." *Stryker Trauma*, 2008 WL 877848, at *1. Accordingly, district courts are "under no obligation to delay their own proceedings by yielding to ongoing USPTO patent reexaminations, regardless of their relevancy to infringement

claims which the court must analyze." *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. 10-4875, 2012 WL 1067900, at *19 (D.N.J. Mar. 29, 2012) (quoting *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 563 (E.D. Va. 2007)) (textual modifications omitted).

IV. **Discussion**

   A. **Whether a stay would unduly prejudice or present a clear tactical disadvantage to ITRI**

LGE argues that a stay will not unduly prejudice ITRI because ITRI "does not practice the '198 patent" and "no potential damages can accrue with respect to the [']198 patent until a Reexamination Certificate issues." (Def. Mov. Br. at 15). Indeed, LGE contends that ITRI's choice to "substantively amend its claims in the reexamination to avoid invalidating prior art" forgoes "any potential claim for damages prior to the issuance of a Reexamination Certificate by the PTO." (*Id.*). LGE adds that any inherent delay in the reexamination process is insufficient to establish the requisite prejudice. (*Id.*). LGE also points to ITRI's request for an extension of time to respond to the PTO's October 15, 2012 rejection, arguing that ITRI "itself delayed the reexamination proceedings." (*Id.* at 15-16; *see also id.* at 6 (explaining that, on November 21, 2012, ITRI asked the PTO for a one-month extension to respond to the PTO's rejection)). And LGE complains that ITRI has "belatedly injected additional issues into the reexamination proceedings" by submitting additional prior art references, without explanation, in the February 20th and March 5th Information Disclosure Statements. (*Id.* at 16).

Finally, LGE argues that ITRI has only identified the GP08LU30 DVD drive as allegedly infringing the '198 and '384 patents. (*Id.*).[5] Thus, LGE contends that ITRI will "continue

---

[5] LGE explains that the '198 and '384 patents both relate to "electromagnetics" and "are asserted against the same component of an LGE product, the GP08LU30 portable drive." (D.E. No. 196, Defendants' Reply in Support of Motion to Stay the Proceedings as to U.S. Patent No. 7,672,198 ("Def. Reply Br.") at 4 n.4).

pursuing infringement claims against LGE's GP08LU30 DVD drive based on its '384 patent" and, therefore, "a stay as to the '198 patent will not unduly prejudice ITRI." (*Id.*).

In opposition, ITRI asserts that "[j]ustice delayed is justice denied." (Pl. Opp. Br. at 15). ITRI contends that reexamination of the '198 patent will last at least three years and that the appeals process will add at least another three more years. (*Id.* at 15-16 (citing district court decisions that reference the timeframe for such proceedings)). ITRI maintains that a stay will "devalue ITRI's patent rights for upwards of six years while denying ITRI its day in court during that time." (*Id.* at 16-17). ITRI also argues that LGE improperly assumes that damages cannot accrue for the '198 patent until a Reexamination Certificate issues because, for that to be true, the Court must first determine that reexamination changes were "substantive." (*Id.* at 17). ITRI further contends that a stay "runs the risk that critical evidence and testimony may be lost, and may result in a less accurate verdict." (*Id.* at 18).

ITRI also asserts that LGE's requests for reexamination and, now, a stay were made for tactical reasons because LGE transferred the instant action to this District and is now "pick[ing] another forum—the PTO." (*Id.* at 18-19). Indeed, ITRI explains that LGE used ITRI's preliminary infringement contentions and the parties' claim construction briefing to support its reexamination request and related submissions thereafter—and that LGE would not have had access to these materials for use in reexamination proceedings but for the instant action. (*Id.*; *see also id.* at 1 (characterizing LGE's "use and submission of this Court's claim-construction procedures to facilitate reexamination" as a "tactical advantage")).

Finally, ITRI argues that LGE delayed requesting reexamination (i.e., twenty-two months after ITRI sued LGE) and delayed requesting a partial stay (i.e., five months after LGE's request for reexamination). (*Id.* at 7-8). ITRI asserts that this delay weighs heavily against granting a

stay. (*Id.* at 7 (citing *Affinity Labs of Tex. v. Apple Inc.*, No. 09-4436, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010); *see also id.* at 7-8 (citing various district court decisions denying reexamination stays in "similar circumstances")).[6] Indeed, ITRI points to LGE's argument in another action—where LGE successfully *opposed* a reexamination stay—that a seventeen-month delay was prejudicial. (*Id.* at 16 (citing *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 09-5142, 2011 WL 487574 (D.N.J. Feb. 7, 2011)). And ITRI argues that, under the recent Leahy-Smith America Invents Act ("AIA"), LGE would have been precluded from requesting *inter partes* reexamination or the AIA's *inter partes* review on or after September 16, 2012. (*Id.* at 9 ("LG[E]'s September 13, 2012 reexamination request would have been completely precluded if filed three days later, i.e. after the AIA went into effect."); *see also id.* at 4 (explaining that ITRI's complaint was pending for twenty-two months by September 2012 and so LGE would have been precluded from seeking *inter partes* review at that time)). ITRI asserts, however, that LGE "waited until three days before [the AIA's September 16, 2012] deadline to request *inter partes* reexamination." (*Id.* at 4).

The Court finds that a stay will not unduly prejudice ITRI or present a clear tactical disadvantage sufficient to deny LGE's motion. The inherent delay in reexamination proceedings for the '198 patent is, by itself, insufficient to deny LGE's request for a stay. *See ICI Uniqema*, 2009 WL 4034829, at *2 ("[T]he possibility of a delay of many months or longer is present in every case where a stay is sought to allow the PTO to reexamine a patent. However, courts have found that the delay inherent in the reexamination process does not constitute, by itself, undue

---

[6] Although ITRI does not specify which *Xerox* factor LGE's alleged delay falls under, the Court addresses ITRI's argument to this effect under the "unduly prejudice or . . . clear tactical disadvantage" factor given the case law ITRI itself relies on. (Pl. Opp. Br. at 7 (citing *Affinity Labs*, 2010 WL 1753206, at *2)); *see also Affinity Labs*, 2010 WL 1753206, at *2 ("Finally, the Court addresses whether entering a stay in this case will unduly prejudice and present a clear tactical [dis]advantage to the non-moving party . . . . . [The defendant] waited until November, 2009 to file its request for an *inter partes* reexamination and, once that request was granted in February, 2010, it waited another seven weeks to file the instant motion to stay. Overall, these significant delays weigh heavily against granting the stay.").

prejudice.") (internal quotations & citations omitted); *Stryker Trauma*, 2008 WL 877848, at *1 ("While any further delay in these proceedings would of course be regrettable, Defendant is at least partially correct in noting that delay is not a dispositive issue as it is common to all stayed cases.").

ITRI correctly observes, however, that LGE successfully opposed a reexamination stay in a different action in this District based on, at least in part, the defendants' delay in requesting reexamination. *See LG Elecs. U.S.A.*, 2011 WL 487574, at *1 ("Further, the Court considers Defendants' delay in filing for a reexamination and a stay. Despite this litigation having been filed in October 2009, Defendants did not request an *inter partes* reexamination on the '655 patent until June 25, 2010, and delayed until November 3, 2010, and January 14, 2011, to file requests for reexamination of the '475, '382 and '820 patents."). But, unlike that case, ITRI has not indicated that the parties here are direct competitors or that ITRI risks losing goodwill that would be difficult to measure. *See id.* ("The parties are direct competitors and this delay would cause Plaintiffs to lose substantial profits as well as goodwill in the market. The goodwill lost during the reexamination proceedings could be difficult to measure and thus difficult to compensate fully with money damages after trial.").

Nevertheless, the Court acknowledges that delay and tactical maneuvering may be at issue in this action. Indeed, LGE does not seem to dispute that it waited twenty-two months to request reexamination of the '198 patent. Still, the Court is convinced that a stay as to the '198 patent is warranted given the advantages discussed in this Opinion. *See Stryker Trauma*, 2008 WL 877848, at *2 ("This Court finds that while delay and tactical advantage are concerns in this case, any delay engendered by a stay would by no means be so indefinite as to mandate denial of Defendant's motion."); *see also Graphon Corp. v. Juniper Networks, Inc.*, No. 10-1412, 2010

WL 3619579, at *3 (N.D. Cal. Sept. 13, 2010) (acknowledging that defendant sought reexamination after a transfer and that the parties may have "engaged in some tactical maneuvers," but finding that, "[o]n balance . . . the Court finds that this factor weighs slightly in favor of staying the case"). For instance, the parties' arguments as to calculating damages for the '198 patent weigh in favor of a stay because the Court must first determine whether reexamination changes are substantive—but the Court cannot do so until the PTO completes its reexamination proceedings.[7] (*See* Pl. Opp. Br. at 17 (explaining that, to adopt LGE's method of calculating damages, "this Court must make the determination whether the [Reexamination] change was substantive")).

Furthermore, the Court is not persuaded otherwise by ITRI's concern over loss of witnesses and evidence. ITRI asserts that a stay as to the '198 patent "for six years runs the risk that critical evidence and testimony may be lost, and may result in a less accurate verdict." (Pl. Opp. Br. at 18). But such "risk" seems inherent to all reexamination stays. And ITRI does not highlight any specific reason why such loss is imminent or even likely.

The Court is likewise not persuaded that LGE's transfer to this Court and subsequent use of preliminary contentions and claim construction briefing in the reexamination proceedings warrant denying LGE's motion. (*See, e.g.*, Pl. Opp. Br. at 19 ("*By waiting five months before requesting a stay*, LG[E] acknowledged that this District is best suited to resolve the issues in question . . . . By its dilatory strategy in seeking a stay, LG[E] leveraged the claim construction procedures to its potential advantage in the reexamination by utilizing materials to which it would not have access *had it timely moved for a stay*.") (emphasis added)). As discussed above,

---

[7] ITRI seems to rely on AIA requirements and legislative history to advance its prejudice and unfairness arguments. (*See* Pl. Opp. Br. at 3-4, 9). Indeed, LGE does not seem to dispute that it could not have sought *inter partes* reexamination or *inter partes* review had it waited any longer to file its request. That said, LGE's September 13, 2012 reexamination request was not, as a matter of law, untimely or improper—a point that ITRI does not seem to dispute.

11

LGE raised the issue of a partial stay with ITRI, and ultimately the Court, in February and March of 2013—shortly *after* ITRI amended asserted claims from the '198 patent in January 2013. Given the timing of ITRI's amendment, LGE's request for a stay simply does not seem untimely. Although this permits LGE to use certain materials derived from this litigation in reexamination proceedings, the Court finds that any prejudice or tactical disadvantage attendant to a stay as to the '198 patent is insufficient to warrant continuing litigation as to this patent.

### B.  Whether a stay will simplify the issues in question and trial of this action

LGE argues that a stay will simplify issues because the reexamination will "eliminate, narrow or clarify key disputed issues." (Def. Mov. Br. at 9). LGE insists that ITRI's amendment "introduces additional structural limitations relating to the claimed 'protruding part,' placing the meaning of a potentially case-dispositive claim term into limbo." (*Id.* at 11-12; *see also id.* at 12 ("These new structural limitations relating to the 'protruding part' have never been raised in this litigation.")). LGE asserts that, "by choosing not to argue the validity of claim 3 [in the reexamination proceedings], ITRI is foreclosed from arguing to this Court that claim 3, as originally issued, is valid and capable of being infringed." (*Id.* at 10). Additionally, LGE explains that ITRI deleted "axial" from claim 3—a term in a presently "disputed claim phrase"—without explanation. (*Id.* at 12-13). Thus, LGE argues that "the final language of claim 3 is now uncertain, but it will certainly recite additional structural limitations that may raise additional claim construction, infringement and/or validity issues." (*Id.* at 10). Accordingly, LGE avers that granting a partial stay will permit this Court to conserve resources until the final disposition of the asserted claims becomes known. (*Id.* at 11). LGE adds that granting a stay will permit the Court to refer to the entire prosecution history before construing disputed claim language. (*Id.* at 13).

In opposition, ITRI argues that a stay will not simplify issues because this action will proceed as to the '150 and '384 patents. (Pl. Opp. Br. at 10-11 (citing *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, No. 10-781A, 2011 WL 3608064, at *7 (W.D.N.Y. Aug. 15, 2011) & *APP Pharms., LLC v. Ameridose LLC*, No. 10-4109, 2011 WL 816622, at *2 (D.N.J. Mar. 8, 2011))). In fact, ITRI explains that LGE is now precluded from seeking *inter partes* reexamination or *inter partes* review of these two patents under the AIA. (*Id.* at 10). ITRI also explains that reexamination is limited to validity questions raised by prior art patents and printed publications and, therefore, issues involving 35 U.S.C. §§ 101 and 112 will necessarily remain in this action. (*Id.* at 11-12). ITRI similarly avers that reexamination cannot resolve issues concerning infringement, inequitable conduct, and anticipation or obviousness based on prior uses. (*Id.* at 12 (citing *Robbins v. H.H. Brown Shoe Co., Inc.*, No. 08-6885, 2009 WL 2170174, at *2 (S.D.N.Y. June 30, 2009)). And ITRI explains that the "PTO applies different validity standards that [sic] the Court" and argues that LGE explicitly "disclaim[ed] any right to rely upon its statements in reexamination during this litigation." (*Id.* at 12-13 (citing LGE's Reexam. Request at 37-38 & 47)).

Finally, ITRI argues that its claim construction proposal for "protruding part" is "consistent" with its reexamination amendments. (*Id.* at 13). ITRI maintains that the Court may adopt its proposal notwithstanding the amended structural language. (*Id.*). As to the deletion of "axial," ITRI asserts that "this deletion comports with LG[E]'s requested construction." (*Id.* at 14-15).

The Court finds that a stay as to the '198 patent can significantly simplify issues in this action. Generally, reexamination may simplify litigation by the "cancellation, clarification, or limitation of claims." *Ethicon*, 849 F.2d at 1428. And, "even if the reexamination [does] not

lead to claim amendment or cancellation, it could still provide valuable analysis to the district court." *Id.* Here, ITRI has already amended certain claims that are asserted in the instant action. Claim amendment isn't merely possible; it is guaranteed. Reexamination therefore seem very likely to assist the Court in resolving validity issues and, if the claims are ultimately cancelled, even infringement issues. *See Everett Labs., Inc. v. River's Edge Pharms., LLC*, No. 09-3458, 2009 WL 4508584, at *3 (D.N.J. Nov. 24, 2009) ("A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.") (internal quotations omitted).

If nothing else, partially staying this action preempts the Court from having to revisit its construction of disputed terms from the '198 patent in view of reexamination amendments (at least some of which have already been made) and/or reexamination arguments. At this juncture, the Court simply does not have the final claim language for the '198 patent. Likewise, the Court simply does not have the entire '198 patent prosecution history. Thus, a stay as to this patent very likely preempts the parties and the Court from wasting resources.

To be sure, the Court acknowledges that issue simplification may *not* always result from a stay as to one of several patents-in-suit. *See, e.g.*, *APP Pharms.*, 2011 WL 816622, at *2 (denying partial reexamination stay and noting that the "reexamination proceedings will not resolve this case in its entirety" and that "no matter what the outcome of the reexamination proceedings, which may not reach a final conclusion for a period of years, the parties will have to litigate" issues relating to the other patent-in-suit). But, unlike the *APP Pharms.* case, the patentee here has already amended asserted claims and the Court does not yet have "an in-depth familiarity with the issues" based on, for example, "a related civil action recently before the

14

Court." *See id.* Similarly, the Court is not convinced that, because the PTO cannot resolve all the issues concerning the '198 patent, a stay is not warranted. As LGE correctly observes, the Court must consider whether a stay will simplify the issues, not whether a stay will eliminate the issues. Here, a stay is likely to do so.

### C. Whether discovery is complete and whether a trial date has been set

LGE contends that discovery is in the early stages for the following reasons (as of Defendants' motion in March 2013): the parties served their first respective document requests on September 26, 2012; third party discovery has not yet begun; and, neither party has taken nor noticed any depositions. (Def. Mov. Br. at 13-14). LGE adds that this Court has not set a trial date and that, under the current scheduling order, "fact and expert discovery are scheduled to close months after the date of the Court's *Markman* order." (*Id.* at 14). ITRI does not seem to dispute the procedural posture of this action or otherwise address this *Xerox* factor in its briefing.

The Court finds that this final factor weighs in favor of granting a stay. The Court is scheduled to hold a *Markman* hearing later this year and no trial date has been set at this time. And, pursuant to the Court's scheduling order, all discovery will close approximately seven months after the Court's *Markman* opinion. (*See* D.E. No. 161). The Court notes that reexamination stays have been granted in other actions in this District that were in more advanced stages of litigation. *See, e.g.*, *ICI Uniqema*, 2009 WL 4034829, at *2 (granting stay after court had entered *Markman* order); *Stryker Trauma*, 2008 WL 877848, at *1, 4 (granting stay where court had already held a jury trial in the first phase of trifurcated proceedings "resulting in a verdict for Plaintiff"). Thus, this third factor weighs in favor of granting a stay as to the '198 patent.

## V. ITRI's Sur-Reply[8]

In its sur-reply, ITRI explains that LGE petitioned the PTO to strike ITRI's "recent Information Disclosure Statement" immediately before ITRI's opposition to LGE's motion for a partial stay was due before this Court. (D.E. No. 200-1, Plaintiff's Sur-Reply in Support of its Opposition to Defendants' Motion to Stay ("Pl. Sur-Reply Br.") at 1). Therefore, ITRI argues that it could not address LGE's petition to strike in its opposition briefing. (*Id.* at 1-2). ITRI adds that LGE has failed to mention this petition to strike in any of its briefing. (*Id.* at 2).

As to the relevance of LGE's petition to strike, ITRI argues that LGE "seeks to exclude the entirety of LG[E]'s invalidity contentions and the alleged prior art references cited therein" from the prosecution history of the '198 patent—yet it argues to this Court, in its motion for a partial stay, that the Court must have the entire prosecution history. (*Id.*). Thus, ITRI insists that "LG[E] hopes to use re-exam as a one-way flow of information that permits LG[E] to obtain and use information provided by ITRI in this litigation, but simultaneously precludes the PTO from considering arguments advanced by LG[E] in this litigation." (*Id.*). ITRI also explains that LGE complained to the PTO about ITRI's one-month delay for filing an Information Disclosure Statement as being "unjustly prejudic[ial]," but wants the Court to now accept a twenty-two month delay before LGE first asked the PTO for reexamination of the '198 patent in September 2012. (*Id.* at 3).[9]

The Court is not persuaded that ITRI's sur-reply arguments warrant denying LGE's motion for a partial stay. First, notwithstanding LGE's petition to strike, ITRI has already

---

[8] The Court previously granted ITRI leave to file a sur-reply. (D.E. No. 201).

[9] In addition to these arguments, ITRI also argues that LGE "filed new evidence and made new arguments" in its reply brief relating to ITRI's preliminary infringement contentions and ITRI's discovery requests in the instant action. (Pl. Sur-Reply Br. at 3-4). Since the Court does not rely on LGE's evidence or arguments that ITRI takes issue with in its sur-reply, however, the Court need not address ITRI's arguments in this regard. To the extent either party disputes the sufficiency or timeliness of preliminary contentions or discovery requests, that party may raise such issues with the Magistrate Judge assigned to this action.

amended disputed claim language from the '198 patent and the prosecution history is incomplete. Accordingly, the Court will conserve resources by declining to construe claim terms from the '198 patent at this time. Second, even accepting that LGE asserts inconsistent positions regarding prejudicial delay, the Court is convinced that partially staying this action will conserve the Court's resources, among other advantages, as highlighted elsewhere in this Opinion.

## VI. Conclusion

For the reasons set forth above, the Court grants LGE's motion and hereby stays this action as to the '198 patent in view of pending reexamination proceedings in the PTO. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**